07-9056-am

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2010

(Decided: March 22, 2011)

Docket No. 07-9056-am

---

In re Paul E. Warburgh,

*Attorney.*

---

Before: Cabranes, Sack, and Wesley, Circuit Judges.

This Court's Committee on Admissions and Grievances has recommended that Paul E. Warburgh, an attorney admitted to the bar of this Court, be disciplined. We adopt the Committee's findings of fact, publicly reprimand Warburgh for the misconduct described in the Committee's report, and grant him leave to resign from this Court's bar.

FOR Paul E. Warburgh:                    Paul E. Warburgh, Esq.,
                                         Huntington, New York.

**PER CURIAM:**

Pursuant to this Court's Local Rule 46.2, it is hereby **ORDERED, ADJUDGED, AND DECREED** that PAUL E. WARBURGH is PUBLICLY REPRIMANDED for the misconduct described in the appended report of this Court's Committee on Admissions and Grievances ("the Committee"), and leave to resign from the bar of this Court is GRANTED.

## I. Summary of Proceedings

By order filed in September 2007, this Court referred Warburgh to the Committee for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures. In March 2008, the Committee ordered Warburgh to show cause why the Committee should not recommend to the Court that disciplinary or other corrective action be taken against him ("the show-cause order"). Although Warburgh requested, and received, multiple extensions of time to respond to the Committee's order, he failed to do so. *See* Report at 2. Moreover, each of his extension requests was made after the relevant deadline had passed, and he failed to respond to a number of other Committee communications. *Id.* One of those Committee communications explicitly advised Warburgh that the Committee would proceed with the matter even in the absence of

a response and that his failure to respond "may constitute an independent basis of professional misconduct subjecting [him] to disciplinary action." *Id.*, quoting Committee letter dated June 10, 2008.

Due to Warburgh's default, the Committee determined that it would take summary action and proceed without a hearing pursuant to Rule 7(d) of the Committee's Rules. Thereafter, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations.

In its report, the Committee concluded that there was clear and convincing evidence that Warburgh had engaged in conduct warranting the imposition of discipline. *See* Report at 7-8. Specifically, the Committee found that Warburgh had failed to comply with this Court's scheduling orders, failed to respond to this Court's inquiries, and failed to communicate with his clients. *Id.* at 3-5, 7 (discussing *United States v. Bazuaye*, 05-5389-cr; *United States v. Martinez*, 05-4825-cr; *United States v. Delvi (Cordero)*, 04-4414-cr; *United States v. Vasquez (Julio De La Cruz)*, 07-0841-cr). The Committee further found that Warburgh's failure to cooperate with the instant investigation constituted both an independent basis for discipline and an aggravating factor. *Id.* at 7, 8.

After identifying several aggravating factors, the Committee stated that, due to Warburgh's failure to respond to the disciplinary charges, it was unaware of any specific

3

mitigating factors. *Id.* at 8. The Committee nonetheless took into account certain evidence found in this Court's records relating to Warburgh's medical problems,[1] as well as his asserted intention to retire.[2] *Id.* at 8, 9. In light of Warburgh's long career, medical issues, and professed intention to retire, the Committee "stop[ped] short of recommending removal from the bar of this Court." *Id.* at 9. Instead, the Committee recommended that Warburgh be privately reprimanded, permitted to withdraw from the bar of this Court, and precluded from readmission. *Id.* The Committee also recommended, however, that Warburgh be involuntarily disbarred if he declined to withdraw. *Id.*

In September 2010, Warburgh submitted a 260-word email in response to the Committee's report. Warburgh: (1) stated that he had "no comment on the Bazuaye matter," but then asserted that there had been a substantial period of time he could not

---

[1] In a June 2006 affirmation in support of a motion for an extension of a briefing deadline, Warburgh stated that, since February 2006, he had suffered from bilateral pneumonia and had also undergone multiple surgeries for malignant melanoma, basal cell carcinoma, and squamous cell carcinoma. *See Martinez*, 05-4825-cr, motion filed June 14, 2006.

[2] Warburgh has requested on at least two occasions to be relieved as counsel because he is retiring or retired. *See United States v. Moran (Grullon)*, 08-4634-cr, motion filed Oct. 22, 2008 (stating that Warburgh "is retiring and no longer has an office or the support staff to do an appeal"); *United States v. Yen*, 09-2303-cr, motion filed Feb. 16, 2010 ("I am now retired and this case was one of my last.").

4

communicate with Bazuaye and that it appeared that Bazuaye had been deported; (2) disputed that he had failed to communicate with his client in the "DeLaCruz matter," stating that De La Cruz's "calls were answered if [Warburgh] was available," that "DeLaCruz received copies of all documents or his family had the opportunity to receive them," and that "everything was timely filed and argued and affirmed"; (3) asserted that the appeal in *Cordero* was erroneously dismissed; and (4) stated that he had "no comment" concerning *Martinez*. Sept. 24, 2010 email. In conclusion, Warburgh stated that he is now retired and he "formally withdr[e]w from the Second Circuit Bar." *Id.* However, since an attorney who is the subject of a disciplinary proceeding in this Court may resign from the Court's bar only upon obtaining leave of the Court, *In re Saghir*, 595 F.3d 472, 473-74 (2d Cir. 2010), we construe Warburgh's statement as requesting leave to resign.

**II. Failure to Respond to Committee's Show-Cause Order**

    **A. Summary Action by the Committee.**

We agree with the Committee that an attorney's failure to respond to the Committee's show-cause order will usually permit the Committee to take summary action. *See* Rule 7(d), Rules of Committee on Admissions and Grievances (2d Cir.) ("In the event the attorney does not respond to the order to show cause, or

5

otherwise waives his or her right to appear at a hearing, or the Committee finds that oral testimony or argument is not required, the Committee may take summary action...."). While there may be circumstances where an attorney's default might not justify summary action - e.g., where the facts underlying the default are themselves disputed, or where other charges of misconduct cannot be resolved through summary action - no such circumstances are evident in the present case.

Additionally, where, as here, the charged attorney has not challenged the Committee's decision to take summary action, any issue relating to the propriety of summary action can be treated as waived, unless a waiver would not be in the interests of justice. For example, a waiver would not relieve the Committee or Court of the obligation to base a finding of misconduct on clear and convincing evidence. *See* Rule 7(h), Rules of Committee on Admissions and Grievances (2d Cir.). We conclude that the Committee properly took summary action and that, in any event, Warburgh has waived any challenge to that decision.

**B.** **Treating Default as Both Independent Basis for Disciplinary Action and Aggravating Factor.**

The Committee also properly treated Warburgh's default as both an independent basis for disciplinary action and an aggravating factor. *See* American Bar Association, Standards for Imposing Lawyer Sanctions § 9.22(e) (1986, amended 1992);

6

*see, e.g., In re Padilla*, 67 N.Y.2d 440, 448, 503 N.Y.S.2d 550, 554 (1986) (finding that attorney's obstructionism in disciplinary proceeding "frustrated the diligent pursuit of serious charges against him, placed into question his fitness to represent others, and itself constituted conduct prejudicial to the administration of justice").

However, we find that a private reprimand is not an adequate disciplinary measure when the attorney knowingly defaulted and failed to show good cause or excusable neglect for the default. An attorney's default in disciplinary proceedings is a serious breach of the attorney's professional obligations to the Court and the public. In such a case, the attorney has not only failed to respond to a Court-sanctioned order, but has done so after the Court already has found good cause to question the attorney's very competence to continue practicing in this Court. Furthermore, such defaults often seriously handicap the Committee and Court in their efforts to reach a fair determination based on a complete record, and usually result in waste of Committee and Court resources.

Thus, in most cases, when an attorney knowingly defaults in a disciplinary proceeding, and fails to show good cause or excusable neglect for the default, the resulting disciplinary measure, for that misconduct alone, should be no less than a public reprimand. That general rule applies here. Warburgh

defaulted a number of times during the Committee's proceedings, never submitted a response to the Committee's show-cause order, failed to make a showing of good cause or excusable neglect for those defaults, compromised the Committee's ability to make a reasoned recommendation based on a full examination of all relevant facts, and wasted the Committee's time and resources. Although the Committee noted that Warburgh's prior medical problems might constitute a mitigating circumstance with regard to the underlying allegations of misconduct, Warburgh has not asserted, and there is no indication, that those medical problems affected his ability to respond to the Committee's show-cause order. In these circumstances, we conclude that a public reprimand is more appropriate than the private reprimand recommended by the Committee.[3]

C. **Waiver of Right to Challenge Committee Report.**

We also conclude that an attorney's unexcused failure to respond to the Committee's show-cause order, or other material default during the Committee's proceedings, may constitute a

---

[3] Although an attorney's refusal to answer questions or produce evidence in a disciplinary proceeding may be protected by the Fifth Amendment privilege against self-incrimination, *see Spevack v. Klein*, 385 U.S. 511, 514, 516 (1967) (plurality), *id.* at 520 (Fortas, J., concurring), that privilege does not apply here, as it was never invoked by Warburgh, *see Minnesota v. Murphy*, 465 U.S. 420, 427 (1984) ("If . . . [a party] desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment."); *In re DG Acquisition Corp.*, 151 F.3d 75, 80 (2d Cir. 1998) ("The Fifth Amendment privilege is not self-executing; if not invoked it may be deemed to have been waived.").

8

waiver of the attorney's right to thereafter challenge in this Court matters encompassed by the show-cause order or other portions of the Committee's proceedings affected by the default. *Cf. In re Amato*, 42 A.D.3d 32, 35 (N.Y. 2d Dep't 2007) (deeming disciplinary charges admitted as a result of default); *In re Filippone*, 213 A.D.2d 849, 849-50 (N.Y. 3d Dep't 1995) (same); *In re Viscomi*, 197 A.D.2d 321, 322 (N.Y. 1st Dep't 1994) (same); *In re Burgess*, 129 A.D.2d 252, 253 (N.Y. 4th Dep't 1987) (same).

In *Thomas v. Arn*, the Supreme Court held that "a court of appeals may adopt a rule conditioning appeal, when taken from a district court judgment that adopts a magistrate's recommendation, upon the filing of objections with the district court identifying those issues on which further review is desired." 474 U.S. 140, 155 (1985). This Court has adopted such a rule. See *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) ("We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object."). The Supreme Court found that such a rule was encompassed by the supervisory power of the courts of appeals to promulgate procedural rules governing the management of litigation, *Thomas*, 474 U.S. at 146, and was supported by "sound considerations of judicial economy," *id.* at

9

147.

> The filing of objections to a magistrate's report enables the district judge to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute. The [court of appeals's] rule, by precluding appellate review of any issue not contained in objections, prevents a litigant from "sandbagging" the district judge by failing to object and then appealing. Absent such a rule, any issue before the magistrate would be a proper subject for appellate review. This would either force the court of appeals to consider claims that were never reviewed by the district court, or force the district court to review every issue in every case, no matter how thorough the magistrate's analysis and even if both parties were satisfied with the magistrate's report. Either result would be an inefficient use of judicial resources. In short, "[t]he same rationale that prevents a party from raising an issue before a circuit court of appeals that was not raised before the district court applies here.

*Id.* at 147-48 (*quoting United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984)). However, the Supreme Court also emphasized that, since the waiver rule was nonjurisdictional, the courts of appeals may excuse defaults in the interests of justice. *Id.* at 155.

The considerations noted in *Thomas* that justify limiting an appeal to those issues raised in properly filed objections to a magistrate judge's report also apply to an attorney's challenge in this Court to a report of the Committee on Admissions and Grievances. We add the following comments specific to the utility of a waiver rule when an attorney defaults before the Committee.

In the present case, Warburgh clearly had an opportunity to address before the Committee all matters discussed in the

10

Committee's show-cause order and this Court's September 2007 referral order, including *Bazuaye*, *De La Cruz* and *Cordero*. Permitting him to address those matters for the first time at this late date, without a showing of good cause or excusable neglect for his default before the Committee, not only would encourage future defaults by attorneys in disciplinary proceedings but would leave this Court with a seriously defective record.

When an attorney fails to cooperate with the Committee's investigation, the Committee may be unable to evaluate all available pertinent evidence (including the attorney's own testimony and other evidence or witnesses whose identity or location might be known only to the attorney), or to test the attorney's version of events through cross-examination and discovery. Additionally, while testimony may, when necessary, be presented remotely by telephone or other electronic means, the attorney's failure to appear at a hearing also may deprive the Committee of the ability to reach conclusions based on the attorney's demeanor. Thus, permitting the attorney to challenge the allegations underlying the Committee's show-cause order only after the Committee has submitted its report would constitute a serious disruption and distortion of the disciplinary process. The distortion of the process is particularly acute when, as here, the attorney asks this Court to consider unsworn factual assertions that have not been

11

subject to cross-examination.

An attorney's default during Committee proceedings also wastes the Court's and Committee's limited resources, and introduces an unnecessary element of uncertainty into the proceedings. The problem is similar to that discussed in *Thomas*. Permitting defenses and issues to be raised for the first time after the Committee's report has been filed with the Court would require the Court either to decide issues that were never analyzed by the Committee – the very body charged with performing such an analysis in the first instance – or to remand the matter to the Committee for further proceedings. Alternatively, the Committee may feel the need to consider all possible defenses and issues despite the default – even those the charged attorney has no intention of raising – to avoid leaving this Court without a recommendation on an issue later presented by the attorney. *See Thomas*, 474 U.S. at 148. As in *Thomas*, "[e]ither result would be an inefficient use of judicial resources." *Id.*

The Committee's volunteer members have dedicated numerous uncompensated hours and other resources to this and every other referred case. Yet Warburgh essentially asks this Court to ignore the Committee's (and this Court's) efforts up to this point and start from scratch based on his conclusory assertions in his response to the Committee's report. In the absence of a showing of good cause or excusable neglect, or that the

12

interests of justice would be served by excusing the default, such a request is unreasonable.

On the other hand, Warburgh was not warned by this Court or the Committee that failure to timely respond to the Committee's show-cause order may constitute a waiver of any future challenge to any matter encompassed by that order. *See Thomas*, 474 U.S. at 155 (finding waiver rule to be valid exercise of supervisory power "at least when it incorporates clear notice to the litigants and an opportunity to seek an extension of time for filing objections"); *Male Juvenile*, 121 F.3d at 38. Although the Committee did warn Warburgh that his failure to respond "may constitute an independent basis of professional misconduct subjecting [him] to disciplinary action," Committee letter dated June 10, 2008, that warning was not broad enough to put him on notice of the possibility of waiver. *See Small v. Sec'y, Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing specificity required of warning that failure to object to magistrate judge's report will waive appellate review). Thus, we will not apply the waiver principle to the present case. However, in future disciplinary proceedings, we request that the Committee include in its orders requiring a response from the charged attorney language to the following effect:

> Your failure to timely respond to, and comply with, this order may (a) constitute a waiver of the right

13

to challenge, in future Committee and Court proceedings, any matter encompassed by this order, and (b) result in disciplinary measures, including suspension or disbarment. *See In re Warburgh*, __ F.3d __ (2d Cir. 2011).

However, the Committee may adapt the warning language as necessary to suit particular circumstances, to ensure that the charged attorney is on notice of the consequences of default in Committee proceedings.[4]

We do not, in any respect, fault the Committee for the procedures it followed in this case, which were fully

---

[4] Upon an attorney's default, the Committee also may immediately recommend to the Court that the attorney be suspended from the bar of this Court, or disciplined in some other manner, until such time as the attorney shows excusable neglect or good cause for the default, the default has been cured, or the disciplinary proceeding is terminated. *See* Second Cir. Local Rule 46.2(b)(3)(F)(iii) ("The Committee ... may apply to the Grievance Panel for an order sanctioning a person who fails to obey a Committee or Grievance Panel order...."). *See also* Eleventh Cir., Rule 3A(2) of Rules Governing Attorney Discipline (Court's order directing attorney to show cause why he should not be disciplined may warn of indefinite suspension if attorney fails to file timely response); *In re Spiegler*, 33 A.D.3d 187, 190 (N.Y. 1st Dep't 2006) (imposing interim suspension, under 22 N.Y. Comp. Codes R. & Regs. § 603.4(e)(1)(i), after finding attorney's failure to respond to disciplinary committee inquiries, appear for deposition, provide subpoenaed documents, or respond to motion for immediate suspension "demonstrates a willful noncompliance with the Committee's investigation that threatens the public interest"); *In re Kaplan*, 49 A.D.3d 107, 111 (N.Y. 1st Dep't 2008) ("dilatory tactics in responding to Committee requests and failure to appear for two scheduled depositions constitutes failure to cooperate with the Committee, warranting interim suspension"). Interim disciplinary measures may be particularly appropriate where they (a) would protect the attorney's clients, the public, or this Court from further misconduct, or (b) are necessary to ensure the attorney's cooperation in the disciplinary proceeding.

14

appropriate. We had not previously suggested that the waiver rule discussed in *Thomas v. Arn* might be applicable to disciplinary proceedings and, thus, the Committee had no reason to warn Warburgh of the possibility of waiver. The waiver rule that we now institute is intended as an aid to the Committee, to decrease the number of defaults by charged attorneys, enabling the Committee to focus more of its resources on the substantive analysis of the merits of cases rather than chasing after uncooperative attorneys. The Committee has been indispensable to this Court, and we wish only to ameliorate one of the more frustrating aspects of the disciplinary process.

**III.  Issues Raised by Response and Additional Relevant Conduct**

Although we do not deem Warburgh's present challenges to the Committee's report to be waived as a result of his default before the Committee, we nonetheless find them meritless for the following reasons. For present purposes, we assume that Warburgh's factual assertions are properly before us despite the fact that they were not made under penalty of perjury and were not subject to cross-examination by the Committee.

**A. Conduct in Martinez.** As a preliminary matter, since Warburgh's response to the Committee's report only addresses his conduct in *Bazuaye*, *De La Cruz* and *Cordero*, we find that he has waived any objection to the Committee's findings concerning

15

*Martinez*, 05-4825-cr. Since those findings are supported by the record, we adopt them.

**B. Conduct in *Bazuaye*.** Warburgh's assertions that he had been unable to communicate with Bazuaye for a substantial period of time, and that Bazuaye appeared to have been deported, have little relevance to the allegations that were made about his conduct in Bazuaye's appeal. According to the September 2007 referral order: (a) Warburgh failed to obey the Court's order directing him to file a motion to withdraw as counsel; (b) Warburgh's failure to file a brief caused the appeal to be dismissed on default; and (c) the Court was informed by Bazuaye that Warburgh had failed to comply with Bazuaye's instruction that he withdraw as counsel, and failed to accept his telephone calls or return messages. *See* Sept. 2007 Order at 1-2. Although Warburgh's assertion that he had been unable to communicate with Bazuaye for a period of time might be relevant to Bazuaye's complaint about messages not being returned, the remaining allegations are far more serious, are not addressed by Warburgh, and are amply supported by the Court's records for that appeal.

**C. Conduct in *De La Cruz*.** Two of the cases discussed in the referral order and Committee report bear the name *De La Cruz*, and Warburgh does not make clear whether he was referring to the case docketed under 07-0841-cr or 04-1448-cr. In either

16

event, we reject his assertions that De La Cruz's "calls were answered if [Warburgh] was available," that "DeLaCruz received copies of all documents or his family had the opportunity to receive them," and that "everything was timely filed and argued and affirmed."

To the extent Warburgh was referencing 07-0841-cr, he appears to be disputing De La Cruz's allegation that Warburgh had refused to communicate with him, and the statements in the September 2007 order and the Committee's report that Warburgh had failed to file a brief by the deadline set in this Court's order, and that his default caused the dismissal of the appeal. *See* Sept. 2007 Order at 1-2; Report at 5. However, Warburgh does not address the allegations that he repeatedly threatened De La Cruz's mother with withdrawal from the case if she did not pay him more money, and that he failed to comply with the Court's instruction that he provide the Court with a copy of his response to De La Cruz's complaint about his conduct. *See* Sept. 2007 Order at 1-2.

Contrary to Warburgh's assertion, the docket clearly reflects that Warburgh failed to comply with this Court's instructions and orders, causing the case to be dismissed on default. *See De La Cruz*, 07-0841-cr, letters docketed Apr. 11, 2007 and May 8, 2007 (requiring response to Court); order docketed Sept. 24, 2007 (requiring Warburgh to show cause why

17

the appeal should not be dismissed based on his default); order docketed Dec. 6, 2007 (dismissing appeal based on Warburgh's default). Additionally, the assertion that De La Cruz's "calls were answered if [Warburgh] was available" is virtually meaningless since Warburgh did not address the specific allegations made by his client and did not explain what was done with De La Cruz's calls when Warburgh was not "available."

To the extent Warburgh was referencing 04-1448-cr, his comments appear irrelevant since the allegations about that case in the referral order concerned the district court proceedings, not the appeal. In any event, the Committee found insufficient evidence of misconduct in that appeal. *See* Report at 7.

**D. Conduct in *Cordero*.** Warburgh's assertion that the appeal in *Cordero* was erroneously dismissed simply agrees with the Committee's conclusion about that dismissal, *see* Report at 4, and Warburgh fails to address the Committee's findings that he had failed to respond to the Court's inquiries, and that he appeared to have made no effort to have the appeal reinstated after its improper dismissal, *id.* at 4, 7. Since the docket supports the Committee's findings, we adopt them.

**E. Recent Conduct.** According to his own filings in this Court, Warburgh has been in the process of retiring for at least two years. *See United States v. Moran (Grullon)*, 08-

4634-cr, motion filed Oct. 22, 2008 (stating that Warburgh "is retiring and no longer has an office or the support staff to do an appeal"). In at least two cases during that time period, he filed appeals and then successfully moved to be relieved based on his retirement. *Id.*, order filed Nov. 12, 2008 (granting motion to be relieved as counsel); *United States v. Yen*, 09-2303-cr, motion filed Feb. 16, 2010 ("I am now retired and this case was one of my last."), order filed Mar. 3, 2010 (granting motion to be relieved as counsel).

Warburgh's most recent case in this Court was *United States v. Medina*, 10-3437-cr, an appeal he filed on August 25, 2010. Although Warburgh indicated, in September 2010, that he intended to move for appointment of new counsel in that case, *see Medina*, 10-3437-cr, Form B filed Sept. 22, 2010, and presumably to be relieved, he did not do so until he was instructed by the Clerk's Office, in late November 2010, to file either a status update letter or a scheduling notification, *id.* at Nov. 29, 2010 docket entry (noting telephone call). His December 2010 motion to be relieved as counsel, based on his retirement, was granted and new counsel substituted. *Id.*, motion filed Dec. 10, 2010, order filed Dec. 14, 2010. We note that the attorney registration web site for the New York State Unified Court System does not indicate that Warburgh has retired.

19

## IV.  Voluntary Withdrawal from this Court's Bar

We will not allow an attorney to "evade [our] disciplinary authority through strategic withdrawal after disciplinary proceedings have commenced." *Saghir*, 595 F.3d at 473.  Thus, "an attorney who is the subject of a disciplinary proceeding in this Court may not resign from the Court's bar without first obtaining leave of the Court." *Id.*  We have previously declined to accept an attorney's resignation where doing so may mislead others into believing that the attorney's separation from this Court's bar was entirely voluntary. *See In re Jaffe,* 585 F.3d 118, 125 (2d Cir. 2009).

Warburgh has not explicitly set forth any basis upon which we can conclude that allowing his voluntary withdrawal would be in the interests of justice. *See In re Yan Wang*, 08-9039-ag, 2010 U.S. App. Lexis 14699 (2d Cir. July 19, 2010) (discussing several factors supporting decision to grant leave to withdraw from Court's bar during the pendency of disciplinary proceedings).  In fact, several of the factors discussed in *Yan Wang* would justify denial of leave to withdraw in this case. However, Warburgh's professed intention to retire from the practice of law suggests that his request for withdrawal is not made solely for the purpose of evading a disciplinary sanction, the misconduct discussed in the Committee's report was not as egregious as that involved in *Jaffe* and *Saghir*, and the fact

20

that this opinion will be made public makes it unlikely that the public will be misled as to the circumstances of his withdrawal.  Accordingly, we grant Warburgh leave to withdraw from this Court's bar.

**V.  Conclusions**

Upon due consideration of the Committee's report, the underlying record, and Warburgh's submissions, it is hereby ORDERED that Warburgh is PUBLICLY REPRIMANDED for the misconduct discussed in the Committee's report, and his request for leave to withdraw from this Court's bar is GRANTED.

The text of this panel's September 2007 order and the Committee's report are appended to, and deemed part of, the present order for the following disclosure purposes.  Warburgh must disclose this order to all clients in cases currently pending in this Court and to all courts and bars of which he is currently a member, and as required by any bar or court rule or order.  Warburgh also must, within fourteen days of the filing of this order, file an affidavit with this Court confirming that he has complied with the preceding disclosure requirement. Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other published decisions of this Court, and to serve a

copy on Warburgh, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[5]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:  Michael Zachary
Counsel to the Grievance Panel


## APPENDIX 1

### Text of September 2007 order

For the reasons that follow, Paul E. Warburgh is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures.  *See* Second Circuit Local Rule 46(h) [now Local Rule 46.2].  We express no opinion here as to an appropriate disposition.  The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

---

[5] Counsel to this panel is authorized to provide, upon request, documents from the record of this proceeding to other attorney disciplinary authorities.  While we request that all such documents remain confidential, we understand that further proceedings by other attorney disciplinary authorities may require that some documents be made public in whole or part.  We leave that determination to the discretion of those disciplinary authorities.

22

Warburgh was referred to this Grievance Panel as a result of the proceedings in *United States v. Bazuaye*, 05-5389-cr. This Court's records in that appeal reflect that, after filing the notice of appeal, Warburgh did not file any other document despite remaining counsel of record for the appellant. In November 2005, this Court issued its first scheduling order in the appeal, establishing a December 2005 deadline for the appellant's brief. *See Bazuaye,* 05-5389-cr, order filed Nov. 8, 2005. In December 2005, prior to the deadline for the appellant's brief, this Court received a copy of a letter from the appellant, addressed to Warburgh, reminding Warburgh to inform this Court that the appellant had asked Warburgh to withdraw. *Id.,* letter filed Dec. 20, 2005. In March, June, and August 2006, the Clerk's Office called Warburgh to request the filing of either a motion to withdraw as counsel or a motion for an extension of time to file a brief. *Id.,* docket entries for Mar. 21, 2006, June 7, 2206, and Aug. 21, 2006. In November 2006, this Court dismissed Bazuaye's appeal for failure to comply with the scheduling order. *Id.,* order filed Nov. 3, 2006.

Shortly thereafter, Bazuaye filed a *pro se* motion for reinstatement of his appeal and appointment of counsel. *Id.,* motion filed Nov. 17, 2006. Bazuaye stated that, in December 2005, he had asked Warburgh to withdraw as counsel and that, in the year preceding Bazuaye's November 2006 motion, Warburgh had "refused to accept [Bazuaye's] calls" or return messages left by two "Social Services workers" from Bazuaye's place of incarceration. *Id.* As a result of Bazuaye's motion, this Court reinstated the appeal, ordered Warburgh to file, within 30 days, a motion to withdraw as counsel in compliance with Second Circuit Local Rule 4(b), and referred "Warburgh's apparent dereliction in th[e] case" to the Court's Grievance Committee. *Id.,* order filed Feb. 15, 2007. The 30-day deadline for the motion to withdraw expired on Monday, March 19, 2007, without Warburgh either filing a motion to withdraw or responding to the February 2007 order in any other way. In May 2007, this Court sua sponte relieved Warburgh and ordered the appointment of new counsel. *Id.,* order filed May 10, 2007.

We also request that the Committee examine the proceedings in several other appeals in this Court in which Warburgh was counsel of record for the appellants. In *United States v. Martinez,* 05-4825-cr, Warburgh, on behalf of the appellant, requested an extension of time to file his brief and was given until December 8, 2005 to do so. *See Martinez,* 05-4825-cr, order filed Nov. 4, 2005. More than three months after the brief was due, the Clerk's Office left a message for Warburgh

23

about the overdue brief and, a month later, dismissed the appeal for failure to comply with the scheduling order. *See id.*, entry dated Mar. 17, 2006 and order filed Apr. 24, 2006. In a separate letter written at the direction of then-Chief Judge Walker, Warburgh was reminded of his obligation under Second Circuit Local Rule 4(b)(a) to continue representing the appellant until relieved by the Court, and was directed to file, within 20 days, either a brief and appendix or a stipulation withdrawing the appeal signed by his client, himself, and opposing counsel. *Id.*, letter filed Apr. 24, 2006. The letter also required him to, *inter alia*, explain his conduct in the appeal and warned that failure to comply would result in *sua sponte* dismissal of Warburgh as attorney of record and issuance of an order to show cause why he should not be disciplined. *Id.*

The 20-day deadline for a response to the April 2006 letter expired on May 15, 2006 without the response or any other document being filed by the appellant or Warburgh. On June 6, 2006, the Court *sua sponte* reinstated the appeal, relieved Warburgh as counsel, and ordered that new counsel be appointed. *Id.*, order filed June 6, 2006. Shortly thereafter, however, Warburgh responded to the April 2006 letter by requesting an extension of time to file an *Anders* brief, which accompanied the motion. *Id.*, motion and other documents filed or received June 14, 2006. In the motion for an extension, Warburgh explained that various serious medical problems in February, March and possibly April 2006 had rendered him unable to work for part of that time-span. *Id.* However, Warburgh did not explain why he was unable to either meet the December 2005 deadline for filing the appellant's brief or cure his default prior to the onset of his illnesses in February 2006. *Id.* This Court granted the extension, which implicitly reinstated Warburgh as counsel and permitted the *Anders* papers to be filed. *Id.*, order and other documents filed June 20 and 22, 2006. The *Anders* motion, and the government's motion for summary affirmance, were later granted. *Id.*, orders filed Nov. 22, 2006.

In *United States v. Vasquez (De La Cruz)*, 04-1448-cr, after this Court remanded the case for possible resentencing, Warburgh's client, De La Cruz, requested that this Court appoint new counsel for the resentencing, based on Warburgh's alleged refusal to return his calls or provide him with copies of documents relevant to his case, including this Court's decisions. *See Vasquez (De La Cruz)*, motion filed July 21, 2006. Among other things, De La Cruz stated that he had filed a complaint with the New York State Bar Association. *Id.* at 1

24

and Exh. 2.

In *United States v. Delvi (Cordero)*, 04-4414-cr, this Court dismissed the appeal of Angel Cordero, Warburgh's client, based on the belief that Warburgh had failed to file a brief even after the Clerk's Office had called Warburgh twice regarding his apparent default. *See Delvi (Cordero)*, docket entries for Sept. 28, 2006, Dec. 19, 2006, and Jan. 10, 2007. However, upon reviewing the Court's file for *Delvi (Cordero)* for purposes of the present proceeding, references to a filed brief were discovered. One of those references was in a letter from Cordero to the Court complaining of certain arguments Warburgh had made in the appellate brief and of Warburgh's failure to send Cordero a copy of the brief despite numerous requests for it by Cordero. *See id.*, Cordero letter filed May 1, 2006. Further investigation led to an entry for Cordero's brief in the docket sheet for a co-defendant's appeal. *See United States v. Delvi (Martinez)*, 03-1138, Jan. 31, 2005 entry. The filing date of that brief -- if it is, in fact, the correct brief -- was in compliance with the scheduling order entered in the appeal docketed under 03-1138.[6] *See id.*, order filed Oct. 8, 2004. While it appears that Warburgh may not have defaulted on the briefing schedule, and thus dismissal may have been inappropriate, there is no indication that Warburgh attempted to correct the error, despite being contacted on several occasions concerning the allegedly late brief.

Most recently, in *United States v. Vasquez (Julio De La Cruz)*, 07-0841-cr, Warburgh's client filed a *pro se* notice of appeal and informed this Court in two letters that his counsel, apparently referring to Warburgh, will not be representing him on appeal, refused to communicate with him, and repeatedly threatened his mother with withdrawal from the case if she did not pay him more money, despite accepting the case with knowledge that the mother had paid with her life savings and

---

[6] The brief filed under 03-1138 is not currently available to this panel, and thus we express no opinion as to whether it is the brief that was thought to be missing in the appeal docketed under 04-4414. The apparent confusion over where the brief should have been filed may have resulted from 03-1138 being the original lead appeal for all of the defendants in Cordero's case, and Cordero's appeal being severed from the other cases shortly before the filing of the brief. *See Delvi (Cordero)*, 04-4414-cr, order severing 04-4414 from 03-1138, filed Dec. 8, 2005. The Clerk's Office has reopened Cordero's appeal. *See id.*, order filed June 13, 2007 (vacating prior dismissal order).

25

had no other money. *See Vasquez (Julio De La Cruz)*, 07-0841-cr, letters filed Apr. 11, 2007 and May 8, 2007. The Clerk's Office forwarded the two letters to Warburgh with a cover letter which instructed him to supply the Court with a copy of his response. *See id.* Although the scheduling order in the case required the appellant's brief to be filed by May 16, 2007, *see id.,* order filed Mar. 28, 2007, Warburgh has yet to file a brief, a motion to withdraw as counsel in compliance with Second Circuit Local Rule 4(b), or any other document in the case. *see also id.,* pro se letter of appellant filed July 20, 2007 (requesting new counsel, and alleging that Warburgh had failed to inform him of Court rulings and otherwise rendered ineffective assistance).

Upon due consideration of the matters described above, it is ORDERED that Paul E. Warburgh is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report consistent with Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
          Michael Zachary
          Supervisory Staff Attorney

26

**April 2009 Report of the Committee**
**on Admissions and Grievances**

**REPORT & RECOMMENDATION**
**In Re: Paul E. Warburgh, #07-9056-am**

## I.   Introduction

By order dated September 7, 2007, the United States Court of Appeals for the Second Circuit (the "Court") referred Paul E. Warburgh to this Committee for investigation of his conduct before the Court and for preparation of a report on whether he should be subject to discipline or other corrective measures. The Committee issued an Order to Show Cause why it should not recommend discipline and/or other corrective action against Mr. Warburgh based on the allegations in the Court's Order.

Mr. Warburgh has defaulted. Therefore, the Committee may take summary action. See Local F.R.A.P. 46(h)(3); Committee Rule 7(d). The following constitutes the Committee's Report and Recommendation to impose discipline on Mr. Warburgh.

## II.   The Referral Order

The Court referred Mr. Warburgh to the Committee by order dated September 7, 2007 (the "Referral Order"). The Referral Order addresses five separate matters pending before the Court in 2005-2007 in which Mr. Warburgh was listed as counsel of record: United States v. Bazuaye, 05-5389-cr; United States v. Martinez, 05-4825-cr; United States v. Vasquez (De LaCruz), 04-14448-cr; United States v. Delvi (Cordero), 04-4414-cr; United States v. Delvi (Martinez), 03-1138-cr; and United States v. Vasquez (Julio De LaCruz), 07-04841-cr. Many of the facts in this Report and Recommendation are taken directly from the Referral Order.

Each matter involves neglect of files, failure to abide by the Court's rules, and/or failure to respond to the Court's inquiries.

## III.    This Disciplinary Proceeding

On March 21, 2008, this Committee issued an Order to Show Cause regarding Mr. Warburgh's conduct as alleged in the Referral Order. The letter was returned because Mr. Warburgh had changed addresses. The Committee located his new office address and sent him a new Order to Show Cause on March 27, 2008. Mr. Warburgh's response was due within thirty days.

By letter dated April 29, 2008, after the deadline for response had passed, Mr. Warburgh requested an extension of time to respond to the Order to Show Cause. He indicated that he would be able to respond by July 2008. By letter of May 1, 2008, the Committee extended his time to respond until May 12, 2008.

On May 21, 2008, Mr. Warburgh contacted the then Secretary for the Committee, Amin Kassam, by telephone and requested an additional extension. Mr. Kassam instructed Mr. Warburgh to put his request and the reasons for the request in a letter to the Committee. Mr. Warburgh did not do so.

On June 10, 2008, the Committee sent another letter to Mr. Warburgh, instructing him that if he did not respond by June 24, 2008, the Committee would proceed without the benefit of his response. The letter also advised that his failure to respond may constitute an independent basis for finding professional misconduct subjecting him to disciplinary action.

In mid-October 2008, Terrence M. Connors, Esq., a member of this Committee, called Mr. Warburgh at his last known telephone number. Mr. Connors left a voicemail message but Mr. Warburgh did not return the call. This Committee's Secretary, Shanya Dingle, also has left two phone messages for Mr. Warburgh that have gone unreturned.

Despite the multiple extensions of time, multiple communications from this Committee, and the passage of over eight months since he was first served with the Order to Show Cause, to this date Mr. Warburgh has not submitted a response to the Order to Show Cause.


## IV.    Factual Background

Because Mr. Warburgh has not submitted a response, the following allegations are uncontested.

## A. United States v. Bazuaye, 05-5389-cr

Mr. Warburgh was counsel for defendant-appellant in this matter. On November 8, 2005, the Court entered a scheduling order making appellant's brief due on December 28, 2005. On December 20, 2005, the Court received a letter written by Mr. Warburgh's client to Mr. Warburgh reminding Mr. Warburgh to inform the Court that his client had asked Mr. Warburgh to withdraw as counsel.

On March 21, June 7, and August 21, 2006, the Clerk's Office called Mr. Warburgh to request that he either file a motion to withdraw as counsel or file a motion for an extension of time to file the brief which was past due. On November 3, 2006, the Court dismissed the appeal for failure to comply with the scheduling order.

On November 17, 2006, appellant moved pro se to reinstate his appeal. In his motion, appellant stated that he had asked Mr. Warburgh to withdraw as counsel in December 2005 and that Mr. Warburgh had refused to accept his calls or return messages left by workers at Mr. Bazuaye's place of incarceration. On February 15, 2007, the Court granted the pro se motion and ordered that Mr. Warburgh file a motion to withdraw as counsel within thirty days.

Mr. Warburgh did not move to withdraw. On May 10, 2007, the Court relieved Mr. Warburgh as counsel and ordered new counsel appointed. According to the docket, appellant's new counsel briefed the appeal and the judgment was affirmed.

## B. United States v. Martinez, 05-4825-cr

Mr. Warburgh was appointed counsel under the Criminal Justice Act on November 4, 2005. Mr. Warburgh requested and was granted an extension of time to file appellant's brief. The brief was due on December 8, 2005.

On March 17, 2006, the Clerk's Office left a message for Mr. Warburgh about his overdue brief. On April 24, 2006, the appeal was dismissed for failure to comply with the scheduling order. The same day, the Court sent a letter to Mr. Warburgh reminding him of his obligation under Second Circuit Local Rule 4(b)(a) to continue representing the appellant until relieved by the Court and directing Mr. Warburgh to file, within twenty days, either a brief and appendix or a stipulation withdrawing the appeal signed by his client, himself, and opposing counsel. The letter also required him to explain his conduct and warned that failure to comply would result in a sua sponte dismissal of Mr. Warburgh as attorney of record and issuance of an order to show cause why he should not be disciplined. Mr. Warburgh did not respond.

On June 6, 2006, the Court reinstated the appeal, relieved Mr. Warburgh as counsel, and ordered that new counsel be appointed. On June 14, 2006, Mr. Warburgh filed an appendix, a motion for an extension of time to file a brief, and an Anders brief. In his affirmation in support of his motion for an extension, Mr. Warburgh explained that he had been experiencing severe medical issues:

22947144v1

In February of this year, I became ill with bilateral pneumonia and I was not working for several weeks and then resumed working part-time. Around the 1st of March, 2006, I had extensive surgery for basal cell carcinoma and as I was recovering from this I was diagnosed with malignant melanoma which required immediate surgery. This surgery required an incision and 32 sutures. About a month later I had more surgery for squamous cell carcinoma and another surgery for basal cell carcinoma. I am now getting back to work at the office and have completed an <u>Anders</u> brief in this case. Unfortunately, my latest illnesses and surgeries have made it difficult to work. Therefore, I respectfully request leave to file the completed brief and appendix in this case at a later date.

Mr. Warburgh's affirmation did not address why he was unable to comply with the original deadline of December 8, 2005, or why he did not cure his failure to comply in the two months before he alleges that he became ill. The Court granted the extension and ultimately granted the <u>Anders</u> motion.

### C. United States v. Vasquez (De LaCruz), 04-1448-cr

Mr. Warburgh timely filed appellant's brief on May 17, 2004. On June 3, 2005, the Court remanded the matter to the district court for further proceedings (in the aftermath of <u>United States v. Booker</u>). On July 21, 2006, Mr. Warburgh's client requested that the Court appoint new counsel, alleging that Mr. Warburgh refused to return his calls or provide him with copies of documents. The client also stated that he had filed a complaint with the New York State Bar Association.

### D. United States v. Delvi (Cordero), 04-4414-cr

On January 10, 2007, the Court dismissed this appeal based on the belief that Mr. Warburgh had failed to file a brief even after the Clerk's Office had called him twice regarding the default. According to the Court's records, it is possible that the brief actually was filed and the dismissal was in error. Regardless, there is no evidence that Mr. Warburgh made any efforts to have the appeal reinstated.

On June 13, 2007, the Court reinstated the appeal. According to the docket, Mr. Warburgh subsequently continued to participate in this matter. The judgment was affirmed on April 15, 2008.

22947144v1

### E. United States v. Vasquez (Julio De La Cruz), 07-0841-cr

On March 28, 2007, the Court issued a scheduling order requiring the record on appeal to be filed by April 16, 2007, and appellant's brief to be filed by May 16, 2007. On April 11 and May 8, 2007, the Court received letters from Mr. Warburgh's client stating that Mr. Warburgh refused to communicate with him and repeatedly threatened his mother with withdrawal from the matter if she did not pay him (even though she reportedly had paid him her life savings). The Clerk's Office forwarded the letters to Mr. Warburgh with a cover letter instructing him to send a copy of his response to the Court.

Mr. Warburgh did not respond to the Court's inquiry, nor did he file a brief. On December 6, 2007, the Court dismissed the appeal for failure to comply with the scheduling order.

### F. Current Registration Status

Mr. Warburgh was admitted to practice before the Court on April 11, 1972. According to the Clerk's Office, Mr. Warburgh currently has two cases pending before the Court, United States v. Geronimo (Panitz), 08-0190-cr, and United States v. Grullon, 08-4634-cr. In the former, Mr. Warburgh has indicated that he intends to withdraw the appeal. In the latter, Mr. Warburgh has filed a motion to be relieved as counsel due to his alleged retirement.

Notably, Mr. Warburgh's registration as a member of the New York State Bar is not current. He was admitted to the bar of New York State by the Appellate Division, Second Department, in 1970. His registration lapsed in February 2008.

## V. Legal Standard

Under the Rules of the Committee on Admissions and Grievances for the United States Court of Appeals for the Second Circuit ("Committee Rules"),

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office . . . . An attorney also may be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Committee Rule 4; see also F.R.A.P. 46(c) ("a court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule").

"Conduct unbecoming a member of the bar" includes "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." In re: Snyder, 472 U.S. 634, 645, 105 S.Ct 2874, 2881 (1985).

Because Mr. Warburgh was a member of the bar of New York State during the time period at issue, the New York State Code of Professional Responsibility ("the Code") also applies. Two sections are of particular relevance in this matter. First, the Code states that a lawyer shall not "[n]eglect a legal matter entrusted to the lawyer." See DR 6-101(A)(3); 22 N.Y.C.R.R. § 1200.30(A)(3). Second, the Code prohibits conduct that "adversely reflects on the lawyer's fitness as a lawyer." DR 1-102(A)(7); 22 N.Y.C.R.R. § 1200.3(A)(7).

According to this Committee's rules, "[a]ny finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Committee Rule 7(h).

If an attorney has been found to have engaged in misconduct, this Committee may recommend to the Court's Grievance Panel that the attorney be:

(a) removed from the bar of the Court,
(b) if not a member of the bar of the Court, precluded from becoming a member or from appearing in future cases in the Court,
(c) suspended from practice before the Court, for either an indefinite or a specified period of time,
(d) publicly or privately reprimanded,
(e) monetarily sanctioned,
(f) removed from the Court's pro bono or Criminal Justice Act panels,
(g) referred to another disciplinary committee, bar association, law enforcement agency, or other agency or organization,
(h) subject to the supervision of a special master, or receive some form of counseling or treatment by an appropriately certified person, or
(i) subject to such other disciplinary or corrective measures as the circumstances may warrant, including any combination of the preceding possible actions.

Committee Rule 6(a)-(i). The following factors are considered in recommending discipline:

(a) the duty violated;
(b) the lawyer's mental state;
(c) the potential or actual injury caused by the lawyer's misconduct; and
(d) the existence of aggravating or mitigating factors.

American Bar Association, Standards for Imposing Lawyer Sanctions ("ABA Standards") (C)(3.0). For misconduct that involves a lack of diligence, disbarment is generally considered appropriate when, among other things, "a lawyer knowingly fails to perform services for a client"

and/or "engages in a pattern of neglect with respect to client matters" and "causes serious or potentially serious injury to a client." Id. 4.41(b), (c).


## VI.    The Alleged Misconduct

In the absence of a response from Mr. Warburgh, it is established by clear and convincing evidence that Mr. Warburgh engaged in the following misconduct:

1.    Neglect of legal matters and failure to comply with court rules, in violation of F.R.A.P. 46(c), 22 N.Y.C.R.R. § 1200.30(A)(3), and Committee Rule 4; see United States v. Bazuaye, 05-5389-cr (failure to abide by the Court's scheduling orders; failure to respond to the Court's inquiries; failure to communicate with client); United States v. Martinez, 05-4825-cr (failure to abide by the Court's scheduling orders); United States v. Vasquez (Julio De LaCruz), 07-04841-cr (failure to abide by the Court's scheduling orders; failure to respond to the Court's inquiries; failure to communicate with client);

2.    Conduct adversely reflecting on Mr. Warburgh's fitness as an attorney and unbecoming a member of the bar, in violation of F.R.A.P. 46(c), 22 N.Y.C.R.R. § 1200.3(A)(7), and Committee Rule 4:

   a.    see United States v. Bazuaye, 05-5389-cr (failure to abide by the Court's scheduling orders; failure to respond to the Court's inquiries; failure to communicate with client); United States v. Martinez, 05-4825-cr (failure to abide by the Court's scheduling orders); United States v. Delvi (Cordero), 04-4414-cr (failure to respond to the Court's inquiries); United States v. Vasquez (Julio De LaCruz), 07-04841-cr (failure to abide by the Court's scheduling orders; failure to respond to the Court's inquiries; failure to communicate with client); and

   b.    Mr. Warburgh's failure to cooperate with the Committee's investigation.

This Committee also finds, however, that the evidence is insufficient to find that Mr. Warburgh engaged in misconduct in United States v. Vasquez (De LaCruz), 04-14448-cr. There is insufficient evidence that Mr. Warburgh committed misconduct while representing the appellant before the Court. His client's complaint addresses alleged conduct committed after the case was remanded to district court. Additionally, his client has submitted a complaint to the New York State Bar Association, which is equipped to handle the complaint in the appropriate

fashion given the nature of when and where the alleged misconduct occurred.

## VII. Aggravating and Mitigating Factors

In recommending discipline, the Committee has considered several aggravating factors. First, Mr. Warburgh has exhibited a pattern of misconduct and has committed multiple offenses. Second, Mr. Warburgh has failed to cooperate with the Committee's investigation, which constitutes both an independent basis for discipline and an aggravating factor. See ABA Standards § 9.22(e); Committee on Grievances of the United States District Court for the Eastern District of New York v. Feinman, 239 F.3d 498 (2d Cir. 2001) (discipline appropriate where attorney failed to cooperate with disciplinary proceeding). Third, Mr. Warburgh has failed to maintain timely registration in at least one other jurisdiction in which he is a member of the bar, the State of New York, where he maintains an office.

Because Mr. Warburgh neither filed a response nor appeared before the Committee, the Committee is not aware of any specific mitigating factors that apply to the alleged misconduct. As noted above, however, Mr. Warburgh has generally advised that he has suffered from medical problems. Earlier this year, Mr. Warburgh mentioned orally to the former Secretary for this Committee that he was experiencing medical problems and intends to retire. Additionally, on various occasions Mr. Warburgh has advised the Court and the Clerk's Office that he has experienced medical problems. Specifically, Mr. Warburgh has advised the Clerk's Office that he suffers from pneumonia and bronchitis every winter and that he had melanoma one-and-a-half years ago. Mr. Warburgh advised that if the melanoma returns, it could be terminal.

Also, in 2006, Mr. Warburgh submitted an affirmation to the Court indicating that he had severe medical problems in February through April 2006 that were interfering with his ability to work. Some of the allegations at issue, but not all, fall within that time period.

In connection with the two cases currently pending before the Court, Mr. Warburgh also has advised of his retirement. By letter dated November 25, 2008, this Committee confirmed with Mr. Warburgh that he is retiring due to age and health issues.

Mr. Warburgh never has specifically detailed for this Committee, however, how and when the medical issues may have affected his ability to work, his mental state, and the other factors that the Committee is charged to consider. Consequently, the Committee is unable to fully evaluate whether Mr. Warburgh's medical problems mitigate the misconduct. Nevertheless, as this Committee advised Mr. Warburgh in its November 25, 2008 letter to him, his medical issues and pending retirement will be taken into account in reporting and making a recommendation to the Court.

## VIII. Recommendation

Mr. Warburgh's conduct clearly warrants discipline. He has repeatedly failed to abide by the Court's rules, failed to respond to the Court's inquiries, failed to communicate with clients, and neglected client matters. Because the Court made multiple attempts to contact Mr. Warburgh about the defaults in the above-described cases, it is clear that Mr. Warburgh had knowledge of the defaults. Therefore, the Committee finds that he knowingly failed to perform services for multiple clients and engaged in a pattern of neglect with respect to client matters causing serious or potentially serious injury to those clients. See ABA Standards 4.41(b), (c).

What is more, Mr. Warburgh failed to cooperate with this Committee's investigation despite an extension of time to respond and multiple correspondence from the Committee inviting his participation.

Finally, though Mr. Warburgh has advised that he has battled multiple health issues, the nexus between his health problems and the alleged misconduct is unclear. Further, despite specific requests from this Committee, Mr. Warburgh has declined to describe those problems in writing so that the Committee could assess his request for a second extension and consider his health issues as mitigating factors against the charges.

Nevertheless, in light of Mr. Warburgh's long career, his battles with medical issues late in his career, and his intention to retire, this Committee stops short of recommending removal from the bar of this court. See Committee Rule 6(a). Instead, this Committee recommends that Mr. Warburgh be permitted to withdraw from the Second Circuit Bar and be precluded from admission to the Second Circuit Bar in the future. This Committee recommends that this sanction be communicated to Mr. Warburgh by a letter of private reprimand from the Court, advising him of the findings and the sanction and offering him the opportunity to withdraw within sixty days of the date of that letter. This Committee further recommends that in the event that Mr. Warburgh declines to withdraw, Mr. Warburgh should be sanctioned by being removed from the bar of this Court.

This sanction will serve to protect the public while acknowledging the presence of at least some mitigating factors. Additionally, this sanction takes into consideration the fact that, upon information and belief, Mr. Warburgh has not been sanctioned by this Court prior to the matters referenced herein.

Respectfully submitted,

Paul Curran /sr c

Member of the Committee
April 8, 2009