In the Matter of CHRISTOPHER C. MCGRATH, JR., an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE for the First Judicial Department, Petitioner.

First Department, November 22, 1983

APPEARANCES OF COUNSEL

*Claudio B. Bergamasco* of counsel (*Michael A. Gentile, attorney*), for petitioner.

*Louis Biancone* of counsel (*Saxe, Bacon & Bolan, P. C., attorneys*), for respondent.

**OPINION OF THE COURT**

*Per Curiam.*

Respondent was admitted to the Bar of this State on December 11, 1961 by the Appellate Division, First Department. From that date to and including 1977 he maintained an office for the practice of law in this Department.

On June 8, 1982 he was personally served with a notice of charges alleging five instances in which he violated the standards of professional conduct. Respondent filed an answer to the charges denying generally the charges that

his actions constituted professional misconduct. The matter was referred for hearing by the Departmental Disciplinary Committee to a panel of its members. Prior to the commencement of the hearing one of the charges was withdrawn. At its conclusion, the panel found that another of the charges had not been sustained. However, it did find the proof sufficient to sustain three of the charges.

The most serious charge involves the claim that respondent, in defending a malpractice action, misrepresented the amount of his client's insurance coverage, as a result of which plaintiff in that action settled the claim for a sum far less than ordinarily he would have done. The facts in that connection are as follows:

Charlotte Slotkin, a 20-year-old diabetic, entered Beth-El Hospital to give birth to a child. It was alleged that by reason of the failure of the two physicians who attended her to timely and properly administer an appropriate drug, she gave birth to a child seriously afflicted with cerebral palsy. The father of the child brought suit on behalf of the child against the hospital and the two physicians. The suit against the two physicians was settled for a total of $20,000. When the suit against the hospital was ready to proceed to trial, respondent was retained by the hospital's insurance carrier, Citizens' Casualty Company, then in the process of rehabilitation, to try the case. The coverage afforded the hospital by Citizens' Casualty was $200,000. However, the hospital carried an excess policy with Lloyd's of London in the sum of $1,000,000 and the file turned over to respondent by Citizens' Casualty contained one or more letters reflecting that fact. Additionally, Citizens' Casualty had reinsured $150,000 of its primary coverage with 10 insurance companies.

Throughout the trial respondent represented that the total coverage carried by the hospital was $200,000. At the settlement negotiations which proceeded during the course of the trial plaintiff's counsel manifested his skepticism at the accuracy of the representation of the amount of coverage. As a result Mr. Ratner, a vice-president of Citizens' Casualty and Mr. Berkowitz, a trustee of the hospital, were brought into the negotiations which ultimately led to a settlement in the sum of $185,000.

Approximately 10 days after the entry into the stipulation of settlement Ratner learned of the excess policy with

Lloyd's. He immediately contacted respondent, who was then on trial in another matter and informed him of the turn of events. Respondent immediately called plaintiff's attorney and the Justice who had presided at the trial, and notified them of this fact. The Trial Judge, who had not yet signed the compromise order, called a conference of the parties at which Lloyd's was present. An effort was made to increase the amount of the settlement by having Lloyd's add to the total agreed to by Citizens' Casualty. Lloyd's refused, although it did agree that if the trial court set aside the settlement and ordered a retrial, it would participate in the retrial up to the full amount of its coverage. However, plaintiff's counsel refused to agree to a setting aside of the stipulation of settlement noting the cost to plaintiff of a retrial and the difficulty of again bringing his experts together. Thereupon, the malpractice action was disposed of on the basis of the stipulation of settlement.

Subsequently, an action was commenced in the United States District Court for the Southern District of New York against Citizens' Casualty, its 10 reinsurers, Ratner, Berkowitz, respondent and his partner, who had assisted him at the trial, bottomed upon the theory of fraud, misrepresentation and/or negligence. Prior to submission to the jury the case against the reinsurers was dismissed. The jury returned a verdict in the sum of $680,000 apportioning it $500,000 against Citizens' Casualty, $100,000 and $60,000 against Berkowitz and Ratner, respectively, and $20,000 against respondent. The case against respondent's partner was dismissed. On motion for judgment notwithstanding the verdict, the District Court held for defendants and dismissed the complaint. On appeal the Circuit Court reversed as against all defendants except Berkowitz, whom it found to be blameless since, in his participation in the settlement, he had relied on the representations of the others, and reinstated the verdicts (614 F2d 301). Its holding declared that the dismissal against the 10 reinsurers and respondent's partner was improper and that the liability of all of the defendants, except Berkowitz, was joint and several. In light of the posture of the case it granted plaintiff the option of accepting the verdict with a remand for the purpose of determining apportionment or retrying the case against all defendants except Berkowitz. Plaintiff then settled the claims against Citizens' Casualty, Ratner and respondent and his partner. Although an effort was

made to pursue the 10 reinsurers, the District Court concluded that the acceptance of the settlement option precluded further litigation (see *Slotkin v Citizens Casualty Co.*, 530 F Supp 789).

The next charge dealt with respondent's handling of an action brought on behalf of Mr. Williams, who was suing the City of New York for assault and battery, false arrest, false imprisonment and defamation. After the case had been placed on the calendar, it was twice noticed for pretrial conference. Respondent failed to appear on either occasion. The case was then marked "off calendar". Although respondent continues to represent Mr. Williams he has never sought to restore the case to the calendar.

The final charge concerns respondent's failure to co-operate with the Disciplinary Committee in its investigation of the Williams' complaint. Initially, he failed to respond to two letters by the committee. Thereafter he was served with a committee subpoena pursuant to which he appeared. However, he requested an adjournment so that he could consult with counsel. The adjournment was granted as was a second adjournment. Respondent failed to appear on the second adjourned date and thereafter.

The evidence supports the conclusion that respondent, in his handling of the *Slotkin* malpractice case engaged in conduct which reflects adversely on his fitness to practice law, in violation of DR 1-102 (A) (6) of the Disciplinary Rules of the Code of Professional Responsibility. His conduct in the *Williams* case clearly warrants the holding that he has neglected a legal matter entrusted to him in violation of DR 6-101 (A) (3). His failure to co-operate with the Disciplinary Committee in its investigation of the Williams' complaint demonstrates conduct prejudicial to the administration of justice in violation of DR 1-102 (A) (5).

There can be no question but that in the handling of the *Slotkin* malpractice suit respondent was guilty of negligence. At the time he made the representation there was information in his file that contradicted the representation made by him. Nevertheless, his conduct, once actual knowledge was brought to his attention, demonstrates that in acting as he did, he was not prompted by bad faith, or an intent to mislead. The two charges arising out of the *Williams* case are less easily disposed of. Nevertheless,

were these three matters the sum total of respondent's derelictions, we might be inclined to dispose of this proceeding with a severe censure. However, on January 14, 1972, respondent was privately admonished for neglecting a matter entrusted to him and for endeavoring to effect a withdrawal of the complaint in return for the performance of services which he had agreed to perform six years earlier. On January 31, 1978 he was again privately admonished for failure to co-operate with the Disciplinary Committee in its investigation of a complaint made against him. On March 29, 1979 he was publicly censured by us (*Matter of McGrath,* 67 AD2d 109) for neglecting a matter entrusted to him and for failing to maintain a complete record of all of his client's properties by losing his client's case file and for failing to respond to his client's requests and those of a fellow attorney whom the client desired to have substituted for respondent. In these circumstances, and considering respondent's entire record, we deem it appropriate that respondent be suspended for a period of six months.

Accordingly, the findings of the Disciplinary Committee are approved and respondent is suspended from practice of the law for a period of six months and until further order of this court.

KUPFERMAN, J. P., SANDLER, SILVERMAN, BLOOM and MILONAS, JJ., concur.

Respondent suspended from practice as an attorney and counselor at law in the State of New York for a period of six months effective December 1, 1983, and until the further order of this court.