OPINION OF THE COURT
Per Curiam.
These appeals put before us the question whether the Appellate Division can suspend attorneys pending consideration of disciplinary charges against them, where the suspensions are on notice and the orders are based on the attorneys’ admissions or other uncontroverted evidence of misconduct immediately threatening the public interest. We conclude that the Appellate Division has that power.
Lorenzo Padilla
In a report handed down during December 1982 in a case entitled New York Bank for Sav. v Padilla, a Special Referee concluded that appellant Lorenzo Padilla, then an attorney, had perjured himself, suborned perjury and used perjured testimony of others, and recommended that the court refer the matter to petitioner, the Departmental Disciplinary Committee. The Referee’s report was confirmed by the court in December 1983. Based upon both decisions, on January 17, 1984 the Committee initiated a "sua sponte complaint” against Padilla and demanded that he answer within 20 days; additionally, other complaints of professional misconduct had been filed against him by individuals. Although the Commit *444 tee advised Padilla that unexcused failure to answer its complaint constituted misconduct, no answer was forthcoming. On March 15, 1984 the Appellate Division issued a judicial subpoena duces tecum, commanding Padilla to submit to an examination under oath and produce documents. The subpoena was served March 20, but Padilla obtained a number of adjournments based upon requests for clarification of the charges, claims that he was looking for an attorney, and a Federal suit commenced against the Committee (dismissed a few days after it was filed). On April 30, 1984 Padilla failed to appear for his examination under oath, claiming a bad shoulder. However, a telephone call revealed that he was working at his office, and — after seeking and being refused a doctor’s letter — the Committee declared a default.
In May 1984 the Committee asked the Appellate Division, First Department, to suspend Padilla based primarily on the seriousness of the charges against him and his failure to answer, appear or produce documents. The motion was supported by an affirmation describing Padilla’s failure to cooperate, as well as 26 exhibits, including the decisions in the New York Bank for Sav. case, all communications between the parties, and the Federal court papers. In opposition, Padilla did not directly deny the claim of lack of cooperation but rather asserted that there had been a misunderstanding; that he was the victim of a conspiracy among a number of people, including the Special Referee and the Justice who confirmed the report; that he was innocent of the underlying perjury charges; and that he intended to cooperate in the future. By order dated August 28, 1984, the Appellate Division held the motion in abeyance for 60 days and directed the Committee at the end of that period "to submit an affidavit detailing [Padilla’s] cooperation or lack thereof, at which time this Court shall take whatever action it deems necessary.”
On September 12, 1984 the Committee served on Padilla formal charges arising out of both the New York Bank for Sav. case and other complaints that had been lodged against him, including perjury, manufacturing evidence, threatening a Referee, and refusing to return a briefcase to an opposing attorney. A hearing was scheduled for November 20, but was not held on that date, based on Padilla’s representation that he had been unable to locate counsel. Despite mounting evidence of stalling, the Committee granted Padilla a number of adjournments to retain counsel, ultimately scheduling a final date of April 2, 1985. Padilla again did not appear, *445 claiming that he was undergoing emergency oral surgery. Noting that Padilla had failed to answer for more than seven months and that he had abused the adjournments previously granted, the Committee declared him in default, subject to cure at a subsequent hearing. On April 23 the Committee denied an application to set aside the default because Padilla failed to present the requested independent evidence of his claimed dental emergency.
In May 1985, the Committee panel issued findings of fact and conclusions of law, in which it concluded that Padilla was guilty on all charges, and petitioned the Appellate Division to confirm the findings and conclusions and disbar Padilla. Padilla opposed the motion, accusing the Committee of misconduct and corruption, but on July 11, 1985 the court confirmed the determination and ordered Padilla disbarred, effective August 12, 1985 (109 AD2d 247).
Meanwhile, on April 3, 1985 — the day after the Committee had entered his default — Padilla moved in the Appellate Division to dismiss or stay the disciplinary proceeding. On April 10 the Committee served papers in opposition and, referring to the Appellate Division’s August 28, 1984 order, also renewed its motion to suspend Padilla. In support, the Committee annexed an affirmation and exhibits setting forth Padilla’s continued obstructive conduct. Both the Committee and Padilla presented argument to the Appellate Division on the stay application and motion. By order entered April 23, 1985 the Appellate Division, reciting all of the various submissions, denied Padilla’s motion and granted the Committee’s, suspending Padilla effective "immediately and until such time as the matters before the [Committee] are concluded and until the further order of this court” (110 AD2d 589). We granted Padilla leave to appeal from the suspension order (65 NY2d 848), and dismissed Padilla’s subsequent appeal from the disbarment order (67 NY2d 870, motion to vacate order dismissing appeal denied 67 NY2d 937).
S. Simpson Gray
Beginning in June and July 1984 petitioner, the Grievance Committee for the Ninth Judicial District, received a number of complaints regarding the professional conduct of appellant S. Simpson Gray, then an attorney licensed to practice in New York and Pennsylvania, and commenced investigations. In mid-September the Committee learned that on September 7 *446 the Supreme Court of Pennsylvania had suspended Gray on an interim basis for alleged conversion of clients’ funds. The Pennsylvania court action was based upon a verified petition alleging that Gray was the subject of six open complaints for conversion of clients’ funds, together with Gray’s answer in which he did not address or deny the charges, but instead claimed that interim suspension was unnecessary and inappropriate because he had voluntarily gone on inactive status and terminated his practice in Pennsylania. In November 1984, the United States District Court for the Eastern District of Pennsylvania also suspended Gray on an interim basis, a suspension apparently automatically following the State suspension.
Counsel for the Committee questioned Gray under oath on October 4 and December 4, 1984. During those examinations, Gray admitted that he had commingled and personally used the funds of several clients, including an admission that without consent he had used $12,000 in settlement proceeds payable to a client to pay off debts he owed to loansharks. On December 26, 1984 the Committee asked the Appellate Division, Second Department, to suspend Gray and institute a disciplinary proceeding. Annexed to the motion were copies of the Pennsylvania State court order and all papers upon which it was based, the Eastern District of Pennsylvania order, transcripts of the examinations, and the Committee’s disciplinary petition. The Committee argued that the court could suspend Gray automatically based upon the Pennsylvania suspension (citing 22 NYCRR 691.3), and that at all events Gray’s admitted misconduct furnished a sufficient basis for suspension pursuant to Judiciary Law § 90 (2) and Matter of Nuey (61 NY2d 513). Additionally, the Committee urged that unless Gray was suspended his present and future clients were threatened with irremediable harm. Gray opposed the motion.
On April 3, 1985 the court suspended Gray and authorized the institution of a disciplinary proceeding. The order recited all of the papers submitted to the court, and in an accompanying memorandum the court stated (110 AD2d 672, 673):
"After examining the record of the proceeding in Pennsylvania, we find that the procedure in Pennsylvania satisfied due process requirements; that there was sufficient evidence to support the finding of the Pennsylvania court; and that the imposition of discipline by the Pennsylvania court was just *447 under these circumstances. We disagree with [appellant’s] argument that there must be a final determination of the issue of guilt, in Pennsylvania, before this court may act.
"Further, we note that [appellant] gave sworn testimony before the Chief Counsel to the Grievance Committee for the Ninth Judicial District and admitted therein that he converted clients’ funds to his own use, in one case amounting to $12,000.”
By order dated May 10, 1985, the Appellate Division denied Gray’s motion for a stay of the disciplinary proceeding pending determination of criminal charges. We granted Gray leave to appeal from the suspension order (65 NY2d 604), but denied leave to appeal the Appellate Division’s subsequent order striking Gray’s name from the roll of attorneys as a result of his conviction in September 1985 on three counts of grand larceny in the second degree (113 AD2d 500, lv denied 67 NY2d 603).
Discussion
Both suspensions were within the courts’ power.
By statute, the Supreme Court has "power and control over attorneys and counsellors-at-law and all persons practicing or assuming to practice law” in this State, and the Appellate Division is specifically "authorized to censure, suspend from practice or remove from office any attorney and counsellor-atlaw admitted to practice who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice” (Judiciary Law § 90 [2]). The Legislature has thus explicitly confirmed that lawyers are subject to the control and power of the court (People ex rel. Karlin v Culkin, 248 NY 465, 477; see also, Matter of Freeman, 34 NY2d 1, 9; Matter of Zuckerman, 20 NY2d 430, 439, cert denied 390 US 925; Matter of Kaufmann, 245 NY 423, 432; Matter of Dolphin, 240 NY 89, 94; Matter of Flannery, 212 NY 610). While the power to sanction is premised on a finding of guilt by the Appellate Division, that grant of authority must be read to embrace certain subsidiary power when serious misconduct is admitted or uncontroverted and the public interest is threatened (see, e.g., People ex rel. Karlin v Culkin, 248 NY 465, 478, supra).
Attorney disciplinary proceedings "serve to protect the court and society from the practice of law by persons who failed to maintain the necessary standards of integrity and *448 probity” (Matter of Anonymous Attorneys, 41 NY2d 506, 509; see, Matter of Chu, 42 NY2d 490, 493; Matter of Levy, 37 NY2d 279, 282). In both cases before us appellants’ documented misconduct posed an immediate threat to the public interest: Padilla’s obstructionism demonstrated over a period of more than a year frustrated the diligent pursuit of serious charges against him, placed into question his fitness to represent others, and itself constituted conduct prejudicial to the administration of justice (see, Judiciary Law § 90 [2]; Matter of Spiegelman, — AD2d — [May 7, 1986]; Matter of Pikna, 101 AD2d 588; Matter of McGrath, 96 AD2d 267, 270). Without even reaching the effect of the sister State suspension, we note that Gray’s admitted mishandling and misuse of client funds obviously presented substantial risk to others. In these narrow circumstances, the Appellate Division has the power to suspend attorneys although disciplinary charges remain pending against them, in conjunction with the courts’ duty " 'to protect the public in its reliance upon the presumed integrity and responsibility of lawyers’ ” (Matter of Levy, 37 NY2d 279, 282, supra, quoting Matter of Kahn, 38 AD2d 115, 124, affd 31 NY2d 752).
Matter of Nuey (61 NY2d 513, supra) is not to the contrary. In Nuey, the Departmental Disciplinary Committee applied to the Appellate Division to suspend an attorney before it adopted any formal findings or applied for the institution of disciplinary proceedings looking to disbarment. The attorney disputed all charges of misconduct. Any evidence and exhibits produced at the panel hearings were not before the Appellate Division, which thus had no evidentiary basis on which to evaluate guilt or the necessity for suspension. The Appellate Division order of suspension recited no basis on which a finding of misconduct might have been predicated. In those circumstances, "[t]he informal conclusion by a panel of the disciplinary committee with respect to wrongdoing was no substitute for the judicial determination required by the statute before the significant disciplinary measure invoked in this case could be imposed.” (Id., at p 516.) By contrast, in both cases before us admissions or other uncontroverted evidence were presented to the Appellate Division indicating that appellants were guilty of serious misconduct and that suspension was necessary to protect the public. While in Padilla the court only recited the submissions before it — the better course would have been to articulate the reasons for the suspension, as the court did in Gray — this failure was not fatal in light of *449 the ample documentation before that court of both misconduct and urgency.
Finally, the requirements of due process were plainly satisfied. Both appellants had notice of the applications for suspension and the evidence upon which those applications were based, as well as ample opportunity to respond. In both cases there was substantial basis in the record for the conclusion reached, including both evidence of misconduct and a threat to the public. Appellants’ remaining contentions have been reviewed, and are without merit.
Accordingly, the orders of the Appellate Division should be affirmed, without costs.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Hancock, Jr., concur in Per Curiam opinion; Judge Titone taking no part.
In each case: Order affirmed, without costs.