E.S. v H.G. (2025 NY Slip Op 50610(U))

[*1]

E.S. v H.G.

2025 NY Slip Op 50610(U)

Decided on April 23, 2025

Supreme Court, Kings County

Sunshine, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 23, 2025
Supreme Court, Kings County

E.S., Plaintiff,

against
H.G., Defendant.

Index No. REDACTED

Jeffrey S. Sunshine, J.

In this post-judgment enforcement application, the Court is called upon to determine, based on a series of semi-colons and the placement of a comma, whether the father who concedes that he made no child support payments for many years but paid more than $80,000 after the mother filed her enforcement application has paid all child support arrears or whether he still owes the mother child support which she claims in the sum of more than $60,000.
Facts
On February 6, 2006, the parties herein entered into a final stipulation of settlement resolving all ancillary issues in their action for divorce. The stipulation was incorporated but not merged in the Judgement of Divorce signed on April 13, 2006. At that time, the two (2) children of the marriage, who were four (4) and six (6) years old.
It is undisputed that since the judgment of divorce was entered there has been extensive post-judgment litigation in this matter related primarily to the mother being forced to seek enforcement for the father's child support arrears. At this time, the parties, who are both attorneys, are representing themselves. The Court has made extensive records at each appearance in this case as to the risks of appearing self-represented, the right to retain counsel and the availability of the Office of Self-Represented, the local Bar Association referral panel and the resources available at www.nycourts.gov. 
The mother filed this latest post-judgment application seeking enforcement of child support on November 1, 2024 by order to show cause. The father asserts that after the mother sought enforcement he paid $82,400.37 in child support to the mother and, he asserts, he owes no other arrears for child support. The mother contends that the father still owes extensive child support arrears. The parties' positions are based on their disparate readings of the Child Support provisions of their stipulation of settlement and, specifically, their divergent reading of Paragraph 4 [Article VI].
According to Article VI, Paragraph 1, the father agreed to pay basic unallocated child support to the mother, in the amount of $2,078.00 for the two (2) children. This amount was payable on the first day of each month and continued monthly until "the children" were emancipated. Pursuant to Article VI, Paragraph 2, the father agreed to a seven (7%) percent increase in his monthly basic unallocated child support obligation every thirty-six months following the execution of the stipulation [these increases to take place in Feburary 2009, 2012, and 2015] and, beginning in February 2018, the father agreed to a three and a half (3.5%) percent [*2]increase in his monthly basic unallocated child support obligation which would result in a final unallocated child support monthly sum of $2,634.19 and that sum would continue until the children emancipated. There appears to be no disagreement between the parties as to the increases.
The crux of this litigation stems from the conflicting interpretations of Paragraph 4 in Article VI, which provides, in full, as follows:
Notwithstanding any provision of this Article of the contrary, if one of the unemancipated Children is to attend undergraduate college or university and is living away from the Mother's residence, while the other unemancipated Child is living at the Mother's residence, the basic monthly child support amount will be reduced by one-eighth (1/8) of the current level of basic child support for both unemancipated Children; if one of the Children is emancipated and the other Child is unemancipated and living at the Mother's residence, or if both unemancipated Children are attending undergraduate college or university and living away from the Mother's residence, the basic monthly child support amount will be reduced by one-quarter (1/4) of the amount from then current; if one of the Children is emancipated and the other Child is unemancipated and attending ungraduated college or university and is living away from the Mother's residence, the basic monthly child support amount will be reduced by one-half (1/2) of the amount from the current level; once both Children are emancipated, basic child support shall terminate, provided that no reduction in support will occur unless the Father's child support obligations are current and up-to-date [emphasis added].
The mother asserts there has been a lengthy pattern regarding the issue of the father and his child support arrears since the stipulation was entered into. The mother contends that following the divorce, the father became a partner at his law firm, in which he received increased compensation and bonuses but that he was not timely in paying child support and that in the summer of 2010 he left that firm and opened his own practice and subsequently filed a motion to reduce his child support payment. She represents that she filed a cross-motion to enforce the father's child support obligation for add-on expenses which she alleges the father had declined to reimburse her for since March 2010. On January 3, 2011, the court ordered the father to pay the add-on arears and referred the issue of downward modification to former Referee Charmaine Henderson. On May 27, 2011, Referee Henderson issued a decision finding the following:
"A review of the evidence leads to the conclusion that the plaintiff has demonstrated a substantial and unanticipated change in circumstances warranting a downward modification of child support. The overall picture that emerges from the record is that the plaintiff has the capacity to continue to pay child support at the rate of $2,223.00 per month. The suspension of the increase that is scheduled to occur in February 2012 for one year will afford the plaintiff the opportunity to expand his practice or to find another position with a law firm or some combination of the two. In addition, a reduction of his responsibility for the children's additional expenses from fifty (50%) percent from fifty-seven (57%) percent will recognize the reduction in his income and will allow the children to benefit from the activities that these parents anticipated when they negotiated their stipulation of settlement."
The mother contends that the father fulfilled his child support obligations through August 2011 but then he stopped paying again and also did not pay his share of pro rata add-on [*3]expenses from August 2011 to December 2011, which forced her to return to court seeking enforcement. The mother asserts that even after the parties' late-2011 court appearance, the father continued to not pay or reimburse his share of the children's add-on expenses. She argues that any payments that were made by the father toward support were sporadic.
In September 2015, the mother contends that the father moved to Connecticut and continued to refuse to pay child support or any of the children's add-on expenses. On September 7, 2018, the mother filed an order to show cause to hold the father in contempt asserting that at that time, the father owed about over $132,000 in child support and add-on expenses. Consequently, the father agreed to pay about $140,000 in child support arrears.
The mother claims that due to the ongoing cycle of arrears, she would email the father to reiterate the terms in the child support provision of the parties' stipulation. She asserts that she told him if there were any arrears or late payments of child support, there would be no reductions to his monthly child support payments below $2,634.19 per month, which represented the father's child support obligation after February 2018, once their oldest child started to attend university. In doing so, she relied on the following language in the stipulation "provided that no reduction in support will occur unless the Father's child support obligations are current and up-to-date."
The mother represents that the father only sent four (4) checks for monthly child support between January 2019 and May 2023 and those, the mother contends, were for reduced amounts not the full monthly amount of support. The mother concedes she received the following two (2) child support payment in 2019: one check for $2,304.92 dated January 2019 and one check for $2,304.91 dated February 2019 but in an envelope postmarked April 17, 2019.
She asserts that the father's unallocated monthly child support obligation was never reduced pursuant to Paragraph 4 because he either did not pay at all or paid only a reduce sum and when those reduced sums were paid they were paid late. After receiving these checks, the mother contends she emailed the father and notified him that he had not sent the correct, full monthly amount — she contends that because he was in arrears his monthly unallocated support was $2,634.19. The mother concedes that thereafter she only received two (2) more checks — both for the reduced sum of $2,304.91  one dated March 2019 and the other dated April 2019 but both checks mailed with a postmark in July 2020. The father does not dispute the mother's rendition of his non-payment or the timeline of the four (4) checks he did send.
The mother represents that she was, in part, unable to seek enforcement sooner because the father moved from Connecticut to Illinois without providing an address to her so she was unable to send the required notice of arrears to him despite the fact that he made only four (4) partial child support payments over four (4) years. The mother alleges that in January 2022, the the father sold his home in Connecticut for $575,000.00, which she believes was sold for $129,000 more than he paid for it, but that he still did not make any child support payments between January 2022 and May 2023 when his child support obligation ended. The mother also asserts that she was dissuaded from pursuing enforcement while the children were in college because of the tension it caused the children. The father contends that the mother did not seek enforcement sooner because she was attempting to, in effect, "trap" him into penalties; however, the father never asserts that he was not aware that he had not made any child support payments for several years.
The mother asserts that the father accumulated the following in child support arrears from May 2019 through May 2023: $129,075.31. She asserts that the four (4) partial payments [*4]she received albeit late were only partial payments because they were for $2,304.91 instead of the full monthly unallocated support of $2,634.19 and that that for the months of January 2019, February 2019, March 2019 and April 2019 when the father made partial child support payments he still owes arrears of $1,317.11. [$2,634.19 x 4 months = $10,536.77 less $2,304.91 x 4 months = $9,219.64 = $10,536.76 - $9,219.64 = $1,317.11]
The mother contends that non-payment of support obligations is a pattern for the father and that until the parties' youngest child graduated from college in 2023, the father consistently did not pay his share of tuition on time. She claims that the father would set up tuition payments plans with her college but then fail to adhere to these payment plans which, the mother contends, placed the daughter's enrollment in college in jeopardy causing stress for the child and for the mother.
The mother further asserts that it was only on July 11, 2024, that she was able to obtain the father's address in Illinois so that she could send him the required 10-day notice to cure by overnight mail and by e-mail. She alleges that over ten (10) days after records showed he had received notice, the father emailed her that he would send a check for $52,436.69 for child support arrears. The mother admits that she received this payment.
On July 25, 2024, the father emailed the mother that he had rectified his calculations and was sending a check for $16,733.71 of additional arrears owed, including $2,904.31 of add-on expenses which he contends satisfied his add-on share from 2019 through July 2024. The mother admits that she received this payment. In total, the mother concedes that the father paid child support in the sum of $78,389.95 for child support from January 2019 through July 2024. 
The father contends that this satisfies his child support arrears and that he does not owe any further child support to the mother based on his theory that he was entitled to reduced child support after the children went to college awhile the mother alleges that the father still owes child support arrears in the sum of $64,126.43 from January 2019 through May 2023 because, she contends, the father forfeited the benefit of the step-down child support sums in Paragraph 4 because he was in arrears.
Further, the mother argues that the father's consistent disregard for his child support obligation is a sufficient legal basis for the Court to award her statutory interest (9%) from the date of every missed or partial payment, which, she contends, totals an additional sum of $46,164.05 in "penalty" interest. It is undisputed that there is no express provision in the parties' stipulation that provides for the award of any "penalty" interest on child support arrears. It appears that if the mother's reading of Paragraph 4 is sound that the "penalty" for the father not paying child support on time or carrying arrears would be to forfeit the benefit of the reduction in child support.
On November 1, 2024, the mother filed an order to show cause seeking the following relief from this court:
(a) Pursuant to DRL 244: Suspending Plaintiff's driver's license, and/or suspending Plaintiff's license to practice law; all subject to Plaintiff's paying of support arrears and interest of $110,290.48.
(b) Directing the entry of a money judgement against the Plaintiff and in favor of the Defendant for child support arrears in the amount $64,126.43, plus interest accrued through October 2024 in the amount of $46,164.05, plus any additional interest accrued while this motion is pending.
(c) Awarding Defendant counsel fees, costs and disbursements incurred in connection [*5]with the making of this application, incurred by Defendant in the enforcement of the child support provision of the parties' divorce agreement, pursuant to DRL section 238; and
(d) Granting such other and further relief as this Court deems just and proper.
The mother argues that this is her third enforcement motion to compel the father to properly fulfill his child support obligations and the father does not dispute that he has been consistently in arrears since the parties divorced nearly twenty (20) years ago.
On December 2, 2024, during oral argument, the mother acknowledged that she had miscalculated the amount she alleged that she is owed from the father. The mother stated on the record that instead of $64,126.44 in arrears she is only owed $57,211.71 in child support from the father. She did not provide the sum of interest that she believes she is owed, which would be a different calculation based on the mother's newly calculated arrears sum. The father did not dispute this calculation by the mother. 
The plaintiff argues that the mother's request of the Court is unreasonable. He claims that the mother has incorrectly interpreted the parties' stipulation. While not disputing that he was not making any monthly child support payments for many years, he contends that the mother is somehow at fault for his failure to pay because she only sent her ten (10) day notice after the children emancipated.
The father alleges that the mother's calculation of his child support obligations from January 2019 through May 2023 is incorrect. He contends that from January 2019 through August 2019, child support was fixed at $2,304.92 per month, which represented a reduction of one-eighth because the oldest subject child was attending college and not residing with her mother. The father asserts the total amount owed for January 2019 through August 2019 was $18,439.28 [$2,304.92 x 8 months].
In September 2019, the father claims that the youngest subject child started to attend college. He asserts that according to the stipulation, if both children were attending university and not residing with the mother, his child support obligation was reduced by one-quarter. The father argues that the correct monthly child support amount from September 2019 through April 2021 was $1,728.68, totaling to $34,573.60 [$1,728.68 x 20 months = $34,573.60].
It is undisputed that in April 2021 the parties' oldest child turned twenty-two (22)[FN1]
and emancipated. The father argues that pursuant to the step-down provision in the stipulation, if one child is emancipated while one child is attending university and not residing with the mother, his child support obligation is reduced by one-half (50%). The father contends that the correct monthly child support amount from May 2021 through May 2023 was $1,152.45 ($2,304.92 x .5 = $1,152.45), totaling $28,811.25 [$1,152.45 x 25 months = $28,811.25].
Based on the father's calculation, the total amount of child support arrears he [*6]accumulated by paying no child support from January 2019 through May 2023 was only $81,824.13 due, according to his reading of Paragraph 4, to him continuing to receive the financial benefit of the step-downs to the unallocated child support despite his non-payment for those years. According to the father's proposed reading of the stipulation, the financial benefit of the step-down benefit inured to his financial benefit regardless of whether he paid any child support and, again according to his proposed reading, there was no financial implication of him not paying the monthly child support.
It is undisputed that in May 2023, the parties' youngest subject child graduated from college and emancipated, as defined by the parties' stipulation of settlement, and that the father's child support obligation terminated. At oral argument, the father argued that the mother's reading of Paragraph 4 that the financial benefit of the step-downs only inured to the father's benefit if he was current in his child support payments and not carrying any arrears would result in him paying child support for the oldest child after that child emancipated; however, the mother contends, in effect, that the father consented to unallocated support until both children emancipated and that the step-downs only inured to the father's benefit if he paid his child support on time. The mother rather argues that the father's unallocated child support of $2,634.19 continued until the youngest child emancipated because due to the father's refusal to pay any child support for many years he was not eligible to receive the financial benefit of the step-down provision in Paragraph 4.
The father contends and the mother concedes that after she sought enforcement, he paid a total of child support arrears in the sum of $82,400.37.
The father also argued at oral argument that he is entitled to the benefit of the step-down provision in Paragraph 4 regardless of whether he paid child support on time or if he did not pay child support and whether or not he owed child support arrears to the mother. The mother contends that the final clause of Paragraph 4 was to ensure that the father only received the benefit of the step-down if he paid his unallocated child support on time and did not carry arrears. The mother argues that the final clause of Paragraph 4 was to incentivize the father to pay his child support on time and that he would, in effect, be penalized for being in arrears of child support by having to pay the full sum of unallocated child support each month that he was in arrears.
The father claims that the placement of a semi-colon before the relevant language suggests an intention to distinguish it from the rest of the paragraph, which outlined the reductions in child support based on college enrollment or emancipation, and that he is entitled to the benefit of the step-down structure regardless of whether he paid support on time and that the final clause was simply to reinforce the fact that emancipation did not eliminate any outstanding child support arrears.

 Discussion
Money Judgment for Child Support Arrears
"A stipulation of settlement which is incorporated but not merged into a judgement of divorce is a contract subject to the principles of contract construction and interpretation" (Matter of Blonder v. Blonder, 171 AD3d 1043, 1045 [2d Dept 2019]). Accordingly, a court shall interpret a stipulation of settlement "in accordance with its plain and ordinary meaning" (O'Brien v. O'Brien, 115 AD3d 720, 723 [2d Dept 2014]). The court in O'Brien v. O'Brien recognized that when construing a stipulation of settlement, "the court should arrive at a construction which will give fair meaning to all of the language employed by the parties to reach a practical [*7]interpretation of the expressions of the parties so that their reasonable expectations will be realized" (id. at 723). "Where such an agreement is clear and unambiguous on its face, the intent of the parties must be gleaned from the four corners of the instrument, and not from extrinsic evidence" (Rosenberger v. Rosenberger, 63 AD3d 898, 899 [2d Dept 2009]). However, if the stipulation is ambiguous, "the proper inquiry is whether the agreement on its face is reasonably susceptible of more than one interpretation." (Ayers v. Ayers, 92 AD3d 623, 625 [2d Dept 2012]). When assessing this issue, "the court should examine the entire contract and consider the relation of the parties and the circumstances under which the contract was executed." (Id.). When the language of a stipulation of settlement is ambiguous, the court may allow a hearing regarding the surrounding facts and circumstances in order to determine the true intent and meaning of the parties (see Marshall v. Marshall, 52 AD2d 841 [2d Dept 1976].
In Matter of Abramson v. Hasson, the Appellate Division, Second Department held that the trial court erred by not holding a hearing regarding ambiguous language contained in the child support provisions in a parties' stipulation of settlement (see Matter of Abramson v. Hasson, 177 AD3d 869, 870 [2d Dept 2018]). The mother contended that the father failed to meet his child support obligations, arguing that in their stipulation of settlement the term "gross earned income" unambiguously excluded all passive income (id.). The Appellate Division, Second Department explained that a hearing was necessary to determine the parties' true intent in including that language (id.).
In the case at bar, the mother alleges that because the father concedes that he was in arrears of his child support obligation for many years he is not entitled to the benefit of the step-down calculations provided in Paragraph 4 because those "benefits" pursuant to the final clause were to incentivize the father to pay his support on time and he does not get that benefit if he chose not to pay his child support on time, which he concedes he did not do.
There are four provisions in the parties' stipulation of settlement addressing these different scenarios, separated by semicolons to clearly distinguish each provision while maintaining their connection. The final clause in the string of clauses separated by the semicolons includes a comma then the following language: "provided that no reduction in support will occur unless the father's child support obligations are current and up-to-date." The mother argues the language after the comma applies not just to the context of the language in the final clause but, in effect, that the comma was supposed to be a semicolon and that it was a prerequisite to the step-down financial incentives inuring to the father's benefit. The father contends that the language following the comma in the final clause only applies to the final clause and is not a prerequisite for him receiving the benefit of the prior clauses detailing the step-down structure. According to the father's reading of Paragraph 4, each of the clauses separated by a semicolon are "stand alone" clauses and that that portion of the final clause has no impact on him receiving the benefit of the step-downs in his unallocated child support in the prior clauses. 
It appears that to accept the father's reading would, in effect, make the final clause of Paragraph 4 irrelevant because by statute and case law child support arrears cannot even be terminated by Court order so the father's reading of the final clause would, it appears, make it a nullity. The mother's reading appears consistent with the context of the parties' exceedingly detailed child support structure. That detailed child support structure clearly provided for unallocated monthly child support for the parties two (2) children in the sum of $2,078 "until the Children are Emancipated" in Paragraph 1. Paragraph 2 provides that:
...every thirty-six months after the execution of this Agreement (that is, in February 2009, 2012 and 2015), the Father shall increase the monthly amount paid to the Mother as basic child support by 7% (seven percent) over the monthly amount paid to date, payable on the first day of each month and continuing monthly thereafter until the Children are Emancipated..."
Paragraph 4 is a separate provision related to a step-down structure. The mother's reading of the final clause of Paragraph 4 which essentially rest on her position that the final comma was supposed to be another in a list of clauses separated by semicolons, was specifically provided to protect her if the father did not pay his child support on time while giving the father a financial incentive to pay his child support obligation on time. The grammatical structure of Paragraph 4 does create some ambiguity as to how it applies to the paragraph as a whole and under the existing case law an evidentiary hearing is appropriate so that the parties may offer sworn testimony under oath as well as offer into evidence any admissible extrinsic evidence as to that clause. While the mother's reading of Paragraph 4 appears to be the most logical within the context of the entire Child Support section of the stipulation of settlement; however, the Court cannot make such a grammatical change without holding an evidentiary hearing. The parties shall also be prepared to offer testimony and documentary evidence as to the issue of any conflict in the accounting of arrears. 
Evidentiary Hearing
The Court will hold a brief evidentiary hearing on the following issues: 1) whether the last comma in Paragraph 4 was intended to be a stand-alone clause [ie, was the last comma a typographical mistake and supposed to be a semicolon to separate it as an independent clause like all of the proceeding clauses that make up Paragraph 4 or does the language following the comma only refer to the final clause]; 2) based on the determination of issue #1 to calculate what, if any, arrears are outstanding; and 3) the calculation of statutory interest consistent with this opinion on any arrears retroactive to the date of application. 
Interest Before Application
The mother's application for an award of statutory interest back — in effect — to the date of each of the months that the father did not make his monthly child support payments is denied. If the mother sought statutory interest on the arrears, she had the right to seek judicial intervention as early as 2019 when the father stopped making child support payments. If after the hearing the Court determines that the father was owed arrears as of the date of the application the judgment for said arrears shall include statutory interest from the date of this application.
Suspension of Plaintiff's Driver's License
The mother seeks to suspend the father's driver's license and/or his license to practice law, subject to the father's paying of support arrears plus interest. Pursuant to DRL § 244-b, 
In any proceeding for the enforcement of a direction or agreement, incorporated in a judgment or order, to pay any sum of money as child support or combined child and spousal support, if the court is satisfied by competent proof that the respondent has accumulated support arrears equivalent to or greater than the amount of support due pursuant to such judgment or order for a period of four months, the court may order the department of motor vehicles to suspend the respondent's driving privileges, and if [*8]such order issues, the respondent may apply to the department of motor vehicles for a restricted use license pursuant to section five hundred thirty of the vehicle and traffic law. The court may at any time upon payment of arrears or partial payment of arrears by the respondent order the department of motor vehicles to terminate the suspension of respondent's driving privileges. For purposes of determining whether a support obligor has accumulated support arrears equivalent to or greater than the amount of support due for a period of four months, the amount of any retroactive support, other than periodic payments of retroactive support which are past due, shall not be included in the calculation of support arrears pursuant to this section. accumulated support arrears equivalent to or greater than the amount of support due for a period of four months, the court may order the relevant licensing authority to commence proceedings regarding the suspension of the respondent's professional license [emphasis added] (NY Dom. Rel. Law § 244-b(a) [McKinney 2002]).
Here, whether the father has child support arrears — and whether those arrears would equal the sum of four (4) months of child support — is an open question particularly where it is not clear, at this time, what the monthly child support obligation is and, as such, the application to suspend the father's driving license is denied without prejudice.
Suspension of Plaintiff's License to Practice Law
It is well-established that this Court does not have the authority to suspend an attorney's license to practice law in the state of New York for failure to pay child support; that authority is vested in the Appellate Division. (see Matter of Padilla, 67 NY2d 440, 447 [NY 1986]). In New York State, "the Appellate Division is specifically 'authorized to censure, suspend from practice or remove from office any attorney and counsellor-at-law admitted to practice who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice.'" (Id. citing NY Judiciary Law § 90 [McKinney 2013]). 
Application for Counsel Fees For Representing Oneself
It is well-settled that a party cannot be awarded counsel fees for representing themself (see Kay v. Ehrler, 499 U.S. 432, 438 [1991]; see also Leeds v. Burns, 205 AD2d 540 [2d Dept 1994]). In Kay v. Ehrler, the United States Supreme Court held that a pro se litigant, even if they are an attorney, is not entitled to attorney's fees (see Kay v. Ehrler, 499 U.S. 432, 438 [1991]). The opinion in Kay v. Ehrler noted such a law allowing pro se litigants to be awarded counsel fees "would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf" (id.).
The mother seeks an awarded of counsel fees, costs, and disbursements in relation to the present litigation. With respect to DRL § 238, the statute explicitly refers to a party who is being represented by an attorney, not to those who are appearing self-represented. Thus, according to the relevant statute and case law, the mother is not entitled to an award of counsel fees under the law even though she herself is an attorney.
Counsel Fees for Legal Consultation With Someone Not An Attorney of Record
The mother sought an unspecified sum of "counsel fees" in her order to show cause. While she did not address the issue in her affidavit in support or at oral argument, upon careful [*9]review of her application the Court found that she annexed as Exhibit H a signed retainer agreement between the mother and a law firm dated April 20, 2023, more than a year before the mother filed her order to show cause in this post-judgment litigation, in which the scope of representation was limited to "ongoing advice and consultation of your acting as your own attorney within a post-judgment proceeding [emphasis added]." Further, the retainer agreement states, "[t]his retainer agreement does not cover services if you wish that [LAW FIRM NAME REDACTED] to act as your Attorney of Record [emphasis added]." The mother did not provide the qualifications of that attorney or even an affirmation in support of that application.
The mother provided no statutory, contractual, or case law basis that provides support for such an award and it is denied.

 Conclusion
The parties shall appear in-person for the evidentiary hearing on Wednesday, July 16, 2025, at 2:15 p.m.
This shall constitution the decision and order of the Court.
ENTER:
HON. JEFFREY S. SUNSHINE
J.S.C.

Footnotes

Footnote 1:The Court notes that the parties specifically provided in their stipulation of settlement to continue child support until the age of twenty-two (22) in Paragraph 3 (a) "With respect to the Children, "Emancipation" shall be deemed to have occurred upon the earliest happening of any of the following: (a) The Children attaining the age of 21 years; notwithstanding which, if a Child is a full-time college student at age twenty one (21), emancipation shall be deferred until the Child has completed four (4) years of college or when the Child reaches the age of 22, whichever shall first occur."